UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

EUGENE DIVISION

CATHERINE R.,[1]                                          Case No. 1:20-cv-01503-MK

                    Plaintiff,                                    **OPINION
                                                                  AND ORDER**

         v.

COMMISSIONER, Social Security
Administration,

                    Defendant.
_____

**KASUBHAI,** United States Magistrate Judge:

         Plaintiff Catherine R. seeks judicial review of the final decision of the Commissioner of

the Social Security Administration ("Commissioner") denying her application for disability

insurance benefits ("DIB") under Title II of the Social Security Act (the "Act"). This Court has

jurisdiction to review the Commissioner's decision pursuant to 42 U.S.C. § 405(g). All parties

have consented to allow a Magistrate Judge to enter final orders and judgment in this case in

accordance with Fed. R. Civ. P. 73 and 28 U.S.C. § 636(c). *See* ECF No. 17. For the reasons set

forth below, the Commissioner's decision is REVERSED and this case is REMANDED for an

immediate calculation of benefits.

_____

[1] In the interest of privacy, the Court uses only the first name and last name initial of non-
government parties whose identification could affect Plaintiff's privacy.

## PROCEDURAL BACKGROUND

Plaintiff filed an application for DIB in June 2017 with an alleged onset date of June 15, 2016. Tr. 179.[2] Plaintiff's application was denied initially in October 2017 and again upon reconsideration in July 2018. Tr. 13. Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"), Tr. 127, and a hearing was held in September 2019, Tr. 29. On October 30, 2019, the ALJ issued a decision finding Plaintiff not disabled within the meaning of the Act. Tr. 10. The Appeals Council denied Plaintiff's request for review. Tr. 1. Plaintiff timely appealed.

## FACTUAL BACKGROUND

Plaintiff was 60 years old on her alleged onset date. Tr. 65. She completed four or more years of college and had past relevant work experience as a file clerk and manager of a state chamber of commerce. Tr. 205. Plaintiff alleges disability based on lupus, osteo issues, arthritis, high blood pressure, and gastrointestinal issues. Tr. 204.

## LEGAL STANDARD

A court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record. *Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citation omitted). The court must weigh "both the evidence that supports and detracts from the [Commissioner's] conclusion." *Martinez v. Heckler*, 807 F.2d 771, 772 (9th Cir. 1986). "Where the evidence as a whole can support either a grant or a denial, [the court] may not substitute [its] judgment for the ALJ's." *Massachi v.*

---

[2] "Tr." citations are to the Administrative Record. ECF No. 15.

*Astrue*, 486 F.3d 1149, 1152 (9th Cir. 2007) (citation omitted); *see also Burch v. Barnhart*, 400

F.3d 676, 680–81 (9th Cir. 2005) (holding that the court "must uphold the ALJ's decision where

the evidence is susceptible to more than one rational interpretation" (citation omitted)). "[A]

reviewing court must consider the entire record as a whole and may not affirm simply by

isolating a specific quantum of supporting evidence." *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir.

2007) (citation and internal quotations omitted).

The initial burden of proof rests upon the claimant to establish disability. *Howard v.

Heckler*, 782 F.2d 1484, 1486 (9th Cir. 1986). To meet this burden, the claimant must

demonstrate an "inability to engage in any substantial gainful activity by reason of any medically

determinable physical or mental impairment . . . which has lasted or can be expected to last for a

continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

The Commissioner has established a five-step process for determining whether a person

is disabled. *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987); 20 C.F.R. §§ 404.1520, 416.920.  First,

the Commissioner determines whether a claimant is engaged in "substantial gainful activity"; if

so, the claimant is not disabled. *Yuckert*, 482 U.S. at 140; 20 C.F.R. §§ 404.1520(b), 416.920(b).

At step two, the Commissioner determines whether the claimant has a "medically severe

impairment or combination of impairments." *Yuckert*, 482 U.S. at 140–41; 20 C.F.R. §§

404.1520(c), 416.920(c). A severe impairment is one "which significantly limits [the claimant's]

physical or mental ability to do basic work activities[.]" 20 C.F.R. §§ 404.1520(c), 416.920(c). If

the impairment does not, the claimant is not disabled. *Yuckert*, 482 U.S. at 141. At step three, the

Commissioner determines whether the impairments meet or equal "one of a number of listed

impairments that the [Commissioner] acknowledges are so severe as to preclude substantial

gainful activity." *Id.*; 20 C.F.R. §§ 404.1520(d), 416.920(d). If so, the claimant is conclusively presumed disabled; if not, the analysis proceeds. *Yuckert*, 482 U.S. at 141.

At this point, the Commissioner must evaluate medical and other relevant evidence to determine the claimant's "residual functional capacity" ("RFC"), an assessment of work-related activities that the claimant may still perform on a regular and continuing basis, despite any limitations the claimant's impairments impose. 20 C.F.R. §§ 404.1520(e), 404.1545(b)–(c), 416.920(e), 416.945(b)–(c). At the fourth step, the Commissioner determines whether the claimant can perform "past relevant work." *Yuckert*, 482 U.S. at 141; 20 C.F.R. §§ 404.1520(e), 416.920(e). If the claimant can work, the claimant is not disabled; if the claimant cannot perform past relevant work, the burden shifts to the Commissioner. *Yuckert*, 482 U.S. at 146 n.5. At step five, the Commissioner must establish that the claimant can perform other work that exists in significant numbers in the national economy. *Id.* at 142; 20 C.F.R. §§ 404.1520(e)–(f), 416.920(e)–(f). If the Commissioner meets this burden, the claimant is not disabled. 20 C.F.R. §§ 404.1566, 416.966.

## THE ALJ'S DECISION

At step one, the ALJ found that Plaintiff met the insured requirements of the Act and had not engaged in substantial gainful activity since her alleged onset date. Tr. 15. At step two, the ALJ found that Plaintiff had the following severe impairments: mild lumbar anterolisthesis; lupus; left rotator cuff tear status post arthroscopic repair; scleroderma of the face, hands and feet; osteopenia; and osteoporosis. *Id.* At step three, the ALJ found that Plaintiff did not have an impairment or combination thereof that met or medically equaled the severity of a listed impairment. Tr. 17. The ALJ found that Plaintiff had the RFC to perform light work with the following limitations:

> The claimant can occasionally climb ladders, ropes, and scaffolds and
> occasionally crawl. The individual can occasionally reach overhead with the left,
> non-dominant upper extremity. The individual can tolerate occasional exposure to
> workplace hazards such as unprotected heights and exposed, moving machinery.

Tr. 17–18.

At step four and five, the ALJ determined that Plaintiff was able to perform past relevant work as a manager of a chamber of commerce. Tr. 21. The ALJ thus found Plaintiff was not disabled within the meaning of the Act. Tr. 22.

## DISCUSSION

Plaintiff asserts that remand is warranted for three reasons: (1) the ALJ erred by improperly rejecting Plaintiff's subjective symptom testimony; (2) the ALJ erred in rejecting medical opinion evidence; and (3) the ALJ failed to identify a legally sufficient basis to reject the lay witness statements. The Court addresses each argument in turn.

## I.    Subjective Symptom Testimony

Plaintiff assigns error to the ALJ's evaluation of her subjective symptom testimony. Pl.'s Op. Br. 7–16, ECF No. 22. When a claimant has medically documented impairments that could reasonably be expected to produce some degree of the symptoms complained of, and the record contains no affirmative evidence of malingering, "the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so." *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996). A general assertion that the claimant is not credible is insufficient; instead, the ALJ "must state which . . . testimony is not credible and what evidence suggests the complaints are not credible." *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993). The reasons proffered must be "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony." *Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995) (citation omitted). If the ALJ's finding

regarding the claimant's subjective symptom testimony is "supported by substantial evidence in the record, [the court] may not engage in second-guessing." *Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir. 2002).

Social Security Ruling ("SSR") 16-3p provides that "subjective symptom evaluation is not an examination of an individual's character," and requires that the ALJ consider all the evidence in an individual's record when evaluating the intensity and persistence of symptoms.[3] SSR 16-3p, 2017 WL 5180304, at *2 (S.S.A. Oct. 25, 2017). The ALJ must examine "the entire case record, including the objective medical evidence; an individual's statements about the intensity, persistence, and limiting effects of symptoms; statements and other information provided by medical sources and other persons; and any other relevant evidence in the individual's case record." *Id.* at *4.

Plaintiff testified she had lupus and scleroderma, Tr. 34, with symptom flareups of joint pain and extreme fatigue, Tr. 41. When she had worked, these symptoms caused her to miss a week of work at a time. *Id.* Her skin peels on her hands, feet, and face from the scleroderma, making it hard to use her hands and fingers. Tr. 43–44. Arthritis in her feet causes her to not wear shoes. Tr. 45. Plaintiff has also experienced acute pancreatitis, hair loss from lupus, heart ablation, rashes, and chest pain. Tr. 46–47.

Here, the ALJ rejected Plaintiff's subjective symptom testimony. Tr. 18. The Commissioner asserts that the ALJ supplied three valid rationales that undermined Plaintiff's subjective complaints: (A) an inconsistency with her activities of daily living; (B) an inconsistency with the medical record; and (C) pain relief from treatment.

---

[3] Effective March 28, 2016, SSR 16-3p superseded and replaced SSR 96-7p, which governed the assessment of claimant's "credibility." *See* SSR 16-3p, 2017 WL 5180304, at *1–2 (S.S.A. Oct. 25, 2017).

A.    **Activities of Daily Living**

The Commissioner contends the ALJ properly rejected Plaintiff's testimony based upon her activities of daily living. Def.'s Br. 13. Activities of daily living can form the basis for an ALJ to discount a claimant's testimony in two ways: (1) where the activities contradict a claimant's testimony; or (2) as evidence a claimant can work if the activities "meet the threshold for transferable work skills." *Orn*, 495 F.3d at 639. A claimant, however, need not be utterly incapacitated to receive disability benefits, and sporadic completion of minimal activities is insufficient to support a negative credibility finding. *Vertigan v. Halter*, 260 F.3d 1044, 1050 (9th Cir. 2001); *see also Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998) (requiring the level of activity to be inconsistent with the claimant's alleged limitations to be relevant to her credibility).

The Commissioner cites Plaintiff's ability to do laundry and light housework, drive herself, shop in stores, read, garden flowers, make crafts, and cook as conflicting with Plaintiff's testimony. Def.'s Br. 13; Tr. 17. The Ninth Circuit, however, has consistently held that such a modest level of activity is not sufficient to reject subjective complaints. *See Vertigan*, 260 F.3d at 1050 ("This court has repeatedly asserted that the mere fact that a Plaintiff has carried on certain daily activities, such as grocery shopping, driving a car, or limited walking for exercise, does not in any way detract from her credibility as to her overall disability. One does not need to be 'utterly incapacitated' in order to be disabled." (quoting *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989))).

Moreover, the ALJ's discussion of Plaintiff's daily activities failed to explain "what symptom testimony [was] not credible and what facts in the record lead to that conclusion." *Smolen*, 80 F.3d at 1284; *see also Dodrill*, 12 F.3d at 918. As this Court has recently observed,

an "ALJ's mere recitation of a claimant's activities is insufficient to support rejection of the claimant's testimony as a matter of law." *David J. v. Comm'r, Soc. Sec. Admin.*, No. 3:20-cv-00647-MK, 2021 WL 3509716, at *4 (D. Or. Aug. 10, 2021) (citation omitted). In other words, other than generally summarizing Plaintiff's activities, the ALJ failed to explain how any of the listed activities undermined her subjective symptom testimony. Therefore, this was not a clear and convincing reason to reject Plaintiff's testimony. *See id.*

### B.    Medical Record

As noted, the Commissioner asserts that the ALJ properly discounted Plaintiff's allegations because they were inconsistent with the objective medical evidence. Def.'s Br. 13. In some circumstances, an ALJ may reject subjective complaints where the claimant's "statements at her hearing do not comport with objective medical evidence in her medical record." *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1227 (9th Cir. 2009). However, a lack of objective evidence may not be the sole basis for rejecting a claimant's subjective complaints. *See Rollins v. Massanari*, 261 F.3d 853, 856 (9th Cir. 2001).

An independent review of the record establishes that Plaintiff's subjective complaints are amply supported in the record. For example, a November 2017 treatment statement reflects that Plaintiff presented with severe fatigue, involuntary weight loss, and malaise. Tr. 287. An April 2017 treatment note reflects that Plaintiff presented with chronic pain in her shoulder, lower back, and neck caused by osteoarthritis. Tr. 292. A June 2016 treatment questionnaire reflects that Plaintiff had joint pain, swollen joints, stiffness, swelling of feet and ankles, and diarrhea. Tr. 299. A June 2017 treatment note reflects that Plaintiff presented with chronic pain. Tr. 343; *see also* Tr. 351 (presenting with persistent pain and weakness). As such, the ALJ failed to supply legally sufficient reasoning to reject Plaintiff's testimony on her subjective complaints

alone. Accordingly, the medical record in this case was not a legally sufficient reason to reject

Plaintiff's testimony on her subjective complaints.

### C.    Treatment History

The Commissioner asserts the ALJ properly rejected Plaintiff's testimony because

Plaintiff's medical records reflect Plaintiff "receiving adequate pain relief and functional gain

from her current medication regimen." Tr. 19; *see also* Def.'s Br. 13. "Impairments that can be

controlled effectively with medication are not disabling" under the Act. *Warre v. Comm'r of Soc.

Sec. Admin.*, 439 F.3d 1001, 1006 (9th Cir. 2006) (citations omitted); *see also Parra v. Astrue*,

481 F.3d 742, 751 (9th Cir. 2007) (claimant's physical ailments were adequately treated with

over-the-counter pain medication).

Here, however, medical record establishes Plaintiff was still in pain despite her medical

treatment. For example, after trying a mix of prednisone, lorazepam, Zofran, and oxycodone,

Plaintiff felt it "[did not] help[ ] with her pain management. . . ." Tr. 297. With medication,

Plaintiff classified her pain as "7/10." Tr. 353. Plaintiff also expressed to her primary care

provider in Alaska that she hoped relocating to Medford, Oregon would help with her overall

pain because the weather is drier, which helps her symptoms. Tr. 295–97. Thus, the treatment

record was not a clear and convincing reason to reject Plaintiff's testimony.

In sum, the Commissioner did not present a legally sufficient reason to reject Plaintiff's

testimony on her subjective complaints.

## II.    Medical Evidence

Plaintiff challenges the ALJ's assessment of the medical opinion evidence. Pl.'s Br. 7.

For disability claims filed on or after March 27, 2017, new regulations for evaluating medical

opinion evidence apply. *Revisions to Rules Regarding the Evaluation of Medical Evidence*

("*Revisions to Rules*"), 2017 WL 168818, 82 Fed. Reg. 5844, at *5867–68 (Jan. 18, 2017); *see also Tyrone W. v. Saul*, No. 3:19-cv-01719-IM, 2020 WL 6363839, at *6 (D. Or. Oct. 28, 2020) ("For claims filed on or after March 27, 2017, Federal Regulation 20 C.F.R. § 416.920c governs how an ALJ must evaluate medical opinion evidence.").

Under the new regulations, the Commissioner is no longer required to supply "specific evidentiary weight to medical opinions; this includes giving controlling weight to any medical opinion." *Allen O. v. Comm'r of Soc. Sec.*, 3:19-cv-02080-BR, 2020 WL 6505308, at *5 (D. Or. Nov. 5, 2020) (citing *Revisions to Rules*, 2017 WL 168819, at *5867–68). Instead, ALJs must consider every medical opinion in the record and evaluate each opinion's persuasiveness. 20 C.F.R. §§ 404.1520c(a), 416.920c(a). The two most important factors in doing so are the opinion's "supportability" and "consistency." *Id.* ALJs must articulate "how [they] considered the supportability and consistency factors for a medical source's medical opinions . . . in [their] decision." 20 C.F.R. §§ 404.1520c(b)(2), 416.1520c(b)(2). With regard to supportability, the "more relevant the objective medical evidence and supporting explanations presented by a medical source are to support [their] medical opinion[ ], the more persuasive the medical opinions . . . will be." 20 C.F.R. §§ 404.1520c(c)(1), 416.920c(c)(1). As to consistency, the "more consistent a medical opinion[ ] is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) . . . will be." 20 C.F.R. §§ 404.1520c(c)(2), 416.920c(c)(2). ALJs may consider other factors relating to the providers relationship with the claimant; however, they are not required to do so except in a limited number of circumstances. 20 C.F.R. §§ 404.1520c(b)(3), 416.1520c(b)(3).

The parties do not dispute that the new regulations apply. They do, however, dispute the impact the new regulations have on existing Ninth Circuit caselaw. *See, e.g.*, *Robert S. v. Saul*,

No. 3:19-cv-01773-SB, 2021 WL 1214518, at *4 (D. Or. Mar. 3, 2021) (noting that "the

Commissioner revised agency regulations to eliminate the hierarchy of medical opinions");

*Thomas S. v. Comm'r of Soc. Sec.*, 2020 WL 5494904, at *2 (W.D. Wash. Sept. 11, 2020)

(noting that the "hierarchy [for treatment of medical opinion evidence] underpinned the

requirement in the Ninth Circuit that an ALJ must provide clear and convincing reasons to reject

an uncontradicted doctor's opinion and specific and legitimate reason where the record contains

contradictory opinion"). The Ninth Circuit has not yet addressed whether or how the new

regulations alter the standards set forth in prior cases for rejecting medical opinion evidence. *See*

*Robert S.*, 2021 WL 1214518, at *4 (D. Or. Mar. 3, 2021) (collecting cases).

  Given the Act's broad grant of authority to the agency to adopt rules regarding "proofs

and evidence," prior caselaw must yield to the Commissioner's new, permissible regulations to

the extent older cases expressly relied on the former regulations. *Yuckert*, 482 U.S. at 145 ("The

Act authorizes the Secretary to 'adopt reasonable and proper rules and regulations to regulate and

provide for the nature and extent of the proofs and evidence and the method of taking and

furnishing the same' in disability cases." (citing 42 U.S.C. § 405(a)); *Nat'l Cable & Telecomm.*

*Ass'n v. Brand X Internet Servs.*, 545 U.S. 967, 982–83 (2005) (holding that courts should grant

*Chevron* deference to regulatory changes that conflict with prior judicial precedent, unless a

court's prior construction followed from the unambiguous terms of the statute and thus left no

room for agency discretion); *Emilie K. v. Saul*, 2021 WL 864869, at *4 (E.D. Wash. Mar. 8,

2021) (collecting cases and observing "[m]ost District Courts to have addressed this issue have

concluded that the regulations displace Ninth Circuit precedent").

  The new regulations do not, however, upend the Ninth Circuit's entire body of caselaw

relating to medical evidence, which remain binding on this Court. For example, it remains true

that ALJs may not cherry-pick evidence in discounting a medical opinion. *Ghanim*, 763 F.3d at 1162; *see also Holohan v. Massanari*, 246 F.3d 1195, 1207 (9th Cir. 2001) (reversing ALJ's selective reliance "on some entries in [the claimant's records while ignoring] the many others that indicated continued, severe impairment"). Nor may ALJs dismiss a medical opinion without providing a thorough, detailed explanation for doing so:

> To say that medical opinions are not supported by sufficient objective findings or are contrary to the preponderant conclusions mandated by the objective findings does not achieve the level of specificity our prior cases have required, even when the objective factors are listed seriatim. The ALJ must do more than offer his own conclusions. He must set forth his own interpretations and explain why they, rather than the doctors', are correct.

*Regennitter v. Comm'r of Soc. Sec. Admin.*, 166 F.3d 1294, 1299 (9th Cir. 1999) (citation omitted). In other words, while the new regulations eliminate the previous hierarchy of medical opinion testimony that gave special status to treating physicians, ALJs must still provide sufficient reasoning for federal courts to engage in meaningful appellate review. *See Bunnell v. Sullivan*, 947 F.2d 341, 346 (9th Cir. 1991) (explaining that "a reviewing court should not be forced to speculate as to the grounds for an adjudicator's rejection" of certain evidence); *see also Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1103 (9th Cir. 2014) ("Although the ALJ's analysis need not be extensive, the ALJ must provide some reasoning in order for us to meaningfully determine whether the ALJ's conclusions were supported by substantial evidence."). With these principles in mind, the Court turns to the ALJ's assessment of the medical evidence.

### A.    Wendy Smith, PA-C.

Wendy Smith, PA-C, served as Plaintiff's primary care provider from 1999 to 2017. Tr. 20, 286. PA-C Smith diagnosed Plaintiff with mixed connective tissue disorder, Raynaud's

phenomenon, osteoporosis, anxiety, degenerative joint disease in her back, migraine headaches, L1 compression fracture, and paroxysmal supraventricular tachycardia post ablation. Tr. 300. PA-C Smith indicated Plaintiff could sit and stand for no more than thirty minutes at a time. Tr. 288. PA-C Smith also indicated that Plaintiff would be "off task" while at work more than 25% of the time. Tr. 290.

The ALJ rejected PA-C Smith's opinion. Tr. 20. The Commissioner argues this was proper because PA-C Smith's opinion was (1) internally inconsistent with PA-C Smith's examination of Plaintiff, and (2) inconsistent with Plaintiff's activities of daily living.

1.    Internal Inconsistency

The ALJ found that PA-C Smith's opinion had several inconsistencies in her reporting of Plaintiff. Tr. 20. The ALJ noted that "[i]t seems that [PA-C] Smith second-guessed many of the limitations she initially assessed" in her medical source statement, including opining that Plaintiff would be absent from work one day per month in one instance and four days per month in another instance; opining that Plaintiff is capable of moderate and low stress work; and opining that Plaintiff could stand or walk for two hours and four hours. *Id.* An inconsistency within a doctor's opinion can justify rejecting the opinion. *See Johnson v. Shalala*, 60 F.3d 1428, 1433 (9th Cir. 1995) (explaining that internal contradiction is a legally sufficient reason for rejecting a treating physician's opinion).

However, the medical source statement was not internally inconsistent. In the three places the ALJ identified, PA-C Smith crossed out an initial answer to replace it with her final answer. Tr. 288–90. PA-C Smith crossed out "[a]bout one day per month" to select "[m]ore than four days per month"; crossed out "[c]apable of moderate stress – normal work" to select "[c]apable of low stress work"; and crossed out "sit and stand/walk" for "about 4 hours" to select "about 2

hours." *Id.* Accordingly, this was not a specific and legitimate reason to reject PA-C Smith's opinion.

        2.      <u>Activities of Daily Living</u>

As noted, the ALJ discounted PA-C Smith's opinion based on Plaintiff's daily activities. Tr. 20. Inconsistency between a doctor's opinion and a claimant's daily activities can also justify discounting a medical opinion. *Ghanim v. Colvin*, 763 F.3d 1154, 1162 (9th Cir. 2014) (citation omitted). When assessing whether a claimant's reported activities are inconsistent with a provider's opinions, however, an ALJ errs where she fails to base such a determination on a holistic review of the record. *See id.*

The ALJ failed to take such a holistic view of the record here. For example, although the ALJ cited Plaintiff's ability to cook, drive, garden, and make crafts, the Court finds such limited activities are inconsistent with PA-C Smith's opinion. In her medical source statement, PA-C Smith marked "moderate" for functional limitations to Plaintiff's daily living. Tr. 287. As such, Plaintiff's activities of daily living were not a legally sufficient reason to reject PA-C Smith's opinion. *See Ghanim*, 763 F.3d at 1162 (holding that the ability to complete "some basic chores and occasionally socialize[ ]" was not a legally sufficient reason to discount a doctor's opinion where a "holistic review of the record" showed the claimant "relied heavily on his caretaker, struggled with social interactions, and limited himself to low-stress environments").

In sum, the ALJ failed to supply a specific and legitimate reason to reject PA-C Smith's opinion.

**B.    David Dryland, M.D.**

David Dryland, M.D., served as Plaintiff's treating rheumatologist. Tr. 678. In his treating source statement, Dr. Dryland explained he had seen Plaintiff twice in the six months

Plaintiff had been his patient, beginning in March 2018. Tr. 726. Dr. Dryland diagnosed Plaintiff

with lupus and scleroderma. Tr. 681. The doctor described Plaintiff's symptoms as occurring in

flares without obvious damage or organ involvement, with limitations in hand use by

osteoarthritis in her thumbs. *Id.*

The ALJ rejected Dr. Dryland's opinion. Tr. 20. The Commissioner argues this was

proper because the doctor's opinion was (1) based on only two evaluations of Plaintiff, and (2)

inconsistent with other evidence in the record.

### 1.    Frequency of Evaluations

As noted, the ALJ rejected Dr. Dryland's opinion because Plaintiff saw the doctor only

two times. Tr. 20. While "[t]he frequency of examination may demonstrate the source has a

longitudinal understanding of the claimant's impairments," 20 C.F.R. §§ 404.1520c(c)(3)(ii);

416.920c(c)(3)(ii), here the ALJ's rejection of the opinion on this ground was erroneous.

Although Plaintiff saw the doctor only twice, Dr. Dryland conducted thorough examinations of

Plaintiff and diagnosed her symptoms based on objective medical evidence. For instance, Dr.

Dryland assessed severe osteoarthritis in Plaintiff's thumbs which "greatly limits [her] hand use"

and also noted her "abnormal bone density." Tr. 713–17. As such, rejecting Dr. Dryland's

opinion based on the number of Plaintiff's treatment visits was not a legally sufficient rationale

to reject the opinion.

### 2.    Consistency with Record

The Commissioner asserts the ALJ properly rejected Dr. Dryland's opinion because it

lacked support in the record. Def.'s Br. 9. As noted, under the Commissioner's new regulatory

scheme, the two most important factors in evaluating medical opinion evidence are

"supportability" and "consistency." 20 C.F.R. §§ 404.1520c(a), 416.920c(a). Here, the ALJ's

rejection of Dr. Dryland's opinion based on the relevant regulatory factors and supported by substantial evidence. For example, the doctor's opinion that Plaintiff was unable to walk a "city block[ ] without rest," Tr. 728, was not supported by the doctor's own treatment notes that revealed Plaintiff presented with a normal gait and normal range of motion in her joints. Tr. 712–13; *see also* Tr. 681 (presenting with normal gait); Tr. 693 (same); Tr. 737 (same). Further, although Dr. Dryland opined that Plaintiff had significant functional limitations, the doctor acknowledged that Plaintiff had not experienced a "flare" up of her symptoms under his care. Tr. 730. Finally, Dr. Dryland's opinion that Plaintiff could "stand/walk" less than two hours of an eight-hour workday, was not consistent with PA-C Smith's opinion that Plaintiff retained the ability to do so for two hours a day. *Compare* Tr. 288, *with* Tr. 728. As such, the ALJ properly rejected Dr. Dryland's opinion because it was not supported by, and inconsistent with, the medical record.

### C. Lisa Braun, FNP-C.

Lisa Braun, FNP-C, served as Plaintiff's treating primary care provider. Tr. 838. FNP-C Braun treated Plaintiff beginning in June 2018 after Plaintiff moved to Oregon. Tr. 697. She diagnosed Plaintiff with scleroderma; Raynaud's syndrome to both hands, feet, and lower third of face; and osteoporosis. *Id.*

The ALJ rejected FNP-C Braun's opinion. Tr. 21. The Commissioner argues this was proper because FNP-C Braun's opinion was inconsistent with FNP-C Braun's examination of Plaintiff. Specifically, the Commissioner argues FNP-C Braun inaccurately stated the length of time she had treated Plaintiff and opined that Plaintiff was "currently doing well." Def.'s Br. 10 (citing Tr. 697).

The Commissioner notes that FNP-C Braun indicated she had treated Plaintiff for two years in FNP-C Braun's August 2019 treating source statement. Tr. 838, 842. The Commissioner also notes that the earliest treatment in the record shows that Plaintiff established care with FNP-C Braun in June 2018. Tr. 697. As the Commissioner correctly notes, inconsistency with medical evidence is a germane reason to discount the opinions of sources who are not on the list of acceptable medical sources. *See Molina v. Astrue*, 674 F.3d 1104, 1111–12 (9th Cir. 2012). Here, however, the ALJ's rejection of FNP-C Braun's opinion was improper. The fact that fifteen months is shorter than two years is immaterial to FNP-C Braun's underlying medical opinions regarding Plaintiff. The ALJ failed to provide a legally sufficient, specific and legitimate reason to reject FNP-C Braun's opinion.

The Commissioner also argues that FNP-C Braun's records were "essentially negative" because they note Plaintiff was "'currently doing well' and show that Plaintiff herself indicated on review of systems in those records that she had no complaints." Def.'s Br. 10 (citing Tr. 697). However, as discussed, Plaintiff was still experiencing pain.

Moreover, an independent review of the record reflects that FNP-C Braun's opinion is amply supported by the record. Emergency room notes from January 2018 indicate Plaintiff's chronic diarrhea and scleroderma. Tr. 409. Dr. Dryland opined in a March 2018 treatment note that medication was helping the scleroderma on Plaintiff's face, but not on her hands. Tr. 678. PA-C Smith opined Plaintiff had issues with Raynaud's syndrome in her hands. Tr. 300, 766. Plaintiff has a long history of osteoporosis. *See* Tr. 294, 301, 539; *see also* Tr. 717–25 (Plaintiff visiting a specialized center for osteoporosis in September 2018). These are all diagnoses FNP-C Braun also made in the course of treating Plaintiff. As such, the ALJ improperly rejected FNP-C Braun's opinion.

### III.   Lay Witness Testimony

Plaintiff assigns error to the ALJ's evaluation of the lay witness statements. Pl.'s Op. Br. 17. Lay witness testimony regarding the severity of a claimant's symptoms or how an impairment affects a claimant's ability to work is competent evidence that an ALJ must take into account. *Nguyen*, 100 F.3d at 1467. To reject such testimony, an ALJ must provide "reasons that are germane to each witness." *Rounds v. Comm'r of Soc. Sec. Admin.*, 807 F.3d 996, 1007 (9th Cir. 2015) (quoting *Molina*, 674 F.3d at 1114). Further, the reasons provided must also be "specific." *Taylor v. Comm'r of Soc. Sec. Admin.*, 659 F.3d 1228, 1234 (9th Cir. 2011) (citing *Bruce v. Astrue*, 557 F.3d 1113, 1115 (9th Cir. 2009)). However, where the ALJ has provided clear and convincing reasons for rejecting the claimant's symptom testimony, and the lay witness has not described limitations beyond those alleged by the claimant, the ALJ's failure to provide germane reasons for rejecting lay testimony can be harmless. *Molina*, 674 F.3d at 1121–22.

Although the ALJ must consider evidence from nonmedical sources pursuant to the new regulations, 20 C.F.R. §§ 404.1520c(d), 416.920c(d), the ALJ is "not required to articulate how he considers evidence from nonmedical sources and he does not have to use the same criteria as required for medical sources. The regulations, however, do not eliminate the need for the ALJ to articulate analysis of lay-witness statements." *Ryan L. F. v. Comm'r of Soc. Sec.*, No. 6:18-cv-01958-BR, 2019 WL 6468560, at *8 (D. Or. Dec. 2, 2019) (internal quotations and bracketing omitted). The ALJ errs when the ALJ fails to provide specific, germane reasons for rejecting the lay witness statement. *Joseph M. R. v. Comm'r of Soc. Sec.*, No. 3:18-cv-01779-BR, 2019 WL 4279027, at *12 (D. Or. Sep. 10, 2019).

The record contains four lay witness statements submitted by Plaintiff's husband, Stanley R.; Plaintiff's niece, Shawn N.; Plaintiff's sister, Helen L.; and Plaintiff's daughter, Sara H. Tr.

279 (Stanley R.); 281 (Shawn N.); 274 (Helen L); 277 (Sara H.). The ALJ did not accept or reject any specific lay witness testimony. *See* Tr. 18. Instead, the ALJ summarized the lay witness statements. *Id.*

The Commissioner asserts any error was harmless because the lay witness statement was duplicative of Plaintiff's subjective symptom testimony, which the ALJ properly rejected. However, as discussed above, the ALJ failed to supply legally sufficient reasons for rejecting Plaintiff's subjective complaints. Accordingly, the ALJ's failure to explicitly reject the lay witness statements was harmful error.

## IV.    Remand

A reviewing court has discretion to remand an action for further proceedings or for a finding of disability and an award of benefits. *See, e.g.*, *Stone v. Heckler*, 761 F.2d 530, 533 (9th Cir. 1985). Whether an action is remanded for an award of benefits or for further proceedings depends on the likely utility of additional proceedings. *Harman v. Apfel*, 211 F.3d 1172, 1179 (9th Cir. 2000). In determining whether an award of benefits is warranted, the court conducts the "three-part credit-as-true" analysis. *Garrison*, 759 F.3d at 1020. Under this analysis the court considers whether: (1) the ALJ has failed to provide legally sufficient reasons for rejecting evidence; (2) the record has been fully developed and further proceedings would serve no useful purpose; and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand. *See Dominguez v. Colvin*, 808 F.3d 403, 407 (9th Cir. 2015). Even if all the requisites are met, however, the court may still remand for further proceedings "when the record as a whole creates serious doubt as to whether the claimant is, in fact, disabled[.]" *Garrison*, 759 F.3d at 1021. "Serious doubt" can arise when there are "inconsistencies between the claimant's testimony and the medical evidence," or if the

Commissioner "has pointed to evidence in the record the ALJ overlooked and explained how that evidence casts serious doubt" on whether the claimant is disabled under the Act. *Dominguez*, 808 F.3d at 407 (citing *Burrell v. Colvin*, 775 F.3d 1133, 1141 (9th Cir. 2014)) (internal quotations omitted).

Here, the first requisite is met based on the ALJ's harmful legal errors discussed above. The ALJ failed to supply legally sufficient reasons for rejecting the opinions of Dr. Dryland, PA-C Smith, and FNP-C Braun. The ALJ also failed to supply legally sufficient reasons for rejecting the lay witness testimony. As to the second requisite, the record has been fully developed and further proceedings would not be useful. The VE testified that employers generally do not tolerate employees that miss "more than one day per month." Tr. 59. However, PA-C Smith opined that Plaintiff's impairments would lead to excessive absences of "[m]ore than four days per month." Tr. 290. Thus, in fully crediting PA-C Smith's opinion as true, the ALJ would be required to find Plaintiff disabled on remand. *See Clester v. Comm'r of Soc. Sec.*, No. 09-cv-765-ST, 2010 WL 3463090, at *8 (D. Or. Aug. 3, 2010) (crediting doctor's opinion that the claimant "had *marked limitations* in her ability to . . . *maintain regular attendance, and be punctual within customary tolerances*" combined with VE testimony that "individuals who miss *two or more* days on a chronic basis are not competitively employable" warranted remanding for an immediate calculation and award of benefits) (emphasis added), *adopted*, 2010 WL 3463078 (D. Or. Aug. 31, 2010); *see also Hazen v. Colvin*, 2015 WL 1186776, at *7 (E.D. Wash. Mar. 16, 2015) (crediting doctors' opinions that the claimant had "marked limitations and an inability to sustain basic work activities" and remanding for an immediate calculation and award of benefits).

Lastly, considering the record as a whole, the Court has no basis to doubt that Plaintiff is disabled under the Act. As such, the Court concludes the proper remedy in this case is to remand for a calculation of benefits. *See Garrison*, 759 F.3d at 1022–23.

## CONCLUSION

For the reasons discussed above, the Commissioner's decision was not based on substantial evidence. Accordingly, the Commissioner's decision is REVERSED and this case REMANDED pursuant to sentence four of 42 U.S.C. §405(g) for an immediate calculation and payment of benefits.

IT IS SO ORDERED.

DATED this 10th day of November 2021.

 s/Mustafa T. Kasubhai
Mustafa T. Kasubhai (he/him)
United States Magistrate Judge